**SO ORDERED.**

**SIGNED this 17 day of June, 2025.**

**Joseph N. Callaway**
**United States Bankruptcy Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WILMINGTON DIVISION**

| | |
|---|---|
| **IN RE:** | **CASE NO. 25-02137-5-JNC** |
| **TIGHT LINES FAMILY MEDICINE, PA,** **Debtor-in-Possession** | **Chapter 11** |

**INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL**

**THIS CAUSE** came on for hearing before the Court on 12 June 2025 upon the Debtor's Emergency Motion for an Interim Order Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. §363 ("Motion"). Based upon the record established at the hearing, the testimony and evidence presented and the arguments of counsel, the Court hereby finds and concludes as follows:

1. The above-captioned Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on 6 June 2025 ("Petition Date") and continues to operate as debtor-in-possession.

2. On 10 June 2025, the Debtor filed its Emergency Motion to Use Cash Collateral.

3. On 12 June 2025, the Court held its interim hearing on the Debtor's Motion. Max Brandon Ludlum, President of the Debtor, appeared in support of the Motion at the hearing.

4. The evidence presented by the Debtor showed that the lenders were duly served and noticed regarding the hearing. The record reflects that no opposition to the Motion has been filed.

5. As set forth in the Motion, there are several lenders with UCC-1 financing statements (hereinafter the "Lenders") that are secured by blanket liens, including the Debtor's accounts and accounts receivable (the "Collateral").

6. At this time, the Debtor has not determined the amount owed to any of these creditors as of the Petition Date.

7. Mr. Ludlum testified that the Debtor does not have the funds in non-cash collateral necessary to continue operations without the use of these Lenders' cash collateral.

8. Mr. Ludlum further testified that the use of the cash collateral was in service and for preservation of the lenders' collateral in that the Debtor is working with a new bill servicer to review and collect outstanding receivables. He also testified that the practice is active and will create new receivables. Therefore, the Debtor's use offers adequate protection in that it supports the value of the existing collateral and can provide a source for replacement liens.

9. On an interim basis, the Court will allow the Debtor's use of cash collateral, subject to and within the limits imposed by the terms of this Order and the attached budget ("Budget"). The Budget projects estimated income and expenses for the next 30 days. Therefore, the Debtor reasonably and in good faith believes the Budget is sufficient to fund all projected reasonable and allowable expenses of its Chapter 11 case until 20 June 2025.

10. In exchange for use of cash collateral, the Lenders will be granted a replacement lien in all of the Debtor's post-petition property not already subject to these lenders' continuing liens to the extent of its pre-petition liens as further set forth below, specifically including but not limited to post-petition accounts receivables.

**NOW THEREFORE**, the Court orders, adjudges and decrees as follows:

1. Subject to the terms and conditions of this Order, the Debtor may use the cash collateral of Lenders and shall pay its ordinary and necessary expenses of the Budget until the earlier of: (i) end of business on 20 June 2025; (ii) the Debtor ceases operations; (iii) the Debtor expends any funds or monies for any purpose or amount other than what is set forth in the Budget, provided however that the Debtor's actual cash disbursements for the line items in the Budget may be up to ten percent (10%) more than the budgeted amount for total cash disbursements through the conclusion of the Budget; (iv) any material and/or intentional misrepresentation by the Debtor in the reporting to the Court; (v) the non-compliance or default of the Debtor with any terms and provisions of this Order; or (vi) another Order concerning cash collateral is entered.

2. Prior to the return hearing on this matter, the Debtor will provide to creditor representatives and interested parties a budget for the next 30 days as well as a budget to actual schedule that reports the activities during this interim period.

3. If there is no opposition raised prior to the scheduled return hearing on 24 June 2025, the Court may extend the use of cash collateral by separate Order without hearing for an additional period.

4. As adequate protection for any post-petition diminution in value of the Lenders' interests in its Collateral, including without limitation that caused by the Debtor's use of the lenders' Collateral and/or on account of the Debtor's limited use of cash collateral, the Lenders are hereby granted a post-petition continuing replacement lien in and on the Collateral of the same types and of the same validity, perfection, extent and priority as held by these lenders pre-petition specifically including but not limited to accounts receivables generated post-petition. Said liens are valid and perfected without need for further filing or recordation.

5. The Debtor shall comply with such reporting requirements as the Court may require, and shall grant these Lenders access to review records and inspect the property of the Debtor in order to verify such reports and condition of the collateral upon request.

6. The Debtor shall dispose of no asset of the Debtor unless the lenders are noticed in advance, and upon approval of this Court.

7. During this interim period, the Debtor shall not expend funds in excess of the accounts receivables created during this period as replacement collateral

8. Nothing contained herein shall be deemed as a bar against the Lenders from seeking further or additional adequate protection of its Collateral, as applicable, or pursuing any other rights or remedies available to it under law or equity, including the right to move for relief from the automatic stay. No determination is made in this Order as to the value of any of the Collateral.

9. Except as may be provided in a confirmed Chapter 11 Plan of Reorganization, if any or all of the provisions of this Order are hereafter vacated, modified or stayed by subsequent Order of this Court or any other court, such vacation, modification or stay shall not affect the validity or enforceability of any security interest, lien, or priority authorized or created by this Order. The validity and enforceability of all security interests, liens, and priorities shall survive the conversion of this case to a case under Chapter 7 and the dismissal of this case, if any. The provisions of this Order shall be binding upon and inure to the benefit of these lenders, the Debtor, and their respective successors and assigns. This Order shall be binding on any trustee hereafter appointed under Chapter 7 of the Bankruptcy Code.

10. A further hearing on the Debtor's use of cash collateral will be held on 24 June 2025 at 09:30 AM in the United States Bankruptcy Court, 150 Reade Circle, Greenville, North Carolina.

11. In order to aid the Debtor in preservation of estate funds and resources, the Debtor may request the Court to conduct any return hearing via Zoom, in advance of the hearing.

**END OF DOCUMENT**

| Tight Lines Family Medicine PA: Cash Collateral Budget | | |
|---|---|---|
| First 30 Days | | |
| **Budget Item** | **Income** | **Expense** |
| Projected Operating Income | $30,000.00 | |
| Fuel | | $300.00 |
| Payroll | | $18,800.00 |
| Officer Comp | | $11,200.00 |
| Payroll Taxes | | $5,000.00 |
| Rent | | $4,112.00 |
| Utilites | | $1,400.00 |
| Insurance - General Liability and Causalty | | $0.00 |
| Insurance - Workman's Comp | | $0.00 |
| Insurance - Employee Health | | $743.17 |
| Bank Fees | | $10.00 |
| Repairs | | $1,000.00 |
| Legal | | $0.00 |
| Accounting | | $500.00 |
| Management Software | | $750.00 |
| Office Supplies | | $1,500.00 |
| **Subtotals** | **$30,000.00** | **$45,315.17** |
| **Net Monthly Income** | **($15,315.17)** | |